UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANGEL GARCIA, )<br>)<br>       Plaintiff    )<br>)<br>   v.     )<br>)<br>)<br>)<br>J. GRONDOLSKY, Warden of FMC  )<br>Devens,    )<br>)<br>       Defendant  ) | Civil Action No. 12-12116-JLT |

REPORT AND RECOMMENDATION WITH REGARD
TO DEFENDANT'S MOTION TO DISMISS (Document No. 7)
March 8, 2013

NEIMAN, U.S.M.J.

Presently before the court is Jeffrey Grondolsky, Warden of the Federal Medical Center at Devens ("Defendant")'s motion to dismiss Angel Garcia ("Plaintiff")'s *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. By way of relief, Plaintiff seeks an order for the Bureau of Prisons to cease all delay in processing his request for a kidney transplant.

Defendant's motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). For the reasons which follow, the court will recommend that Defendant's motion to dismiss be allowed.

I. FACTUAL BACKGROUND

Plaintiff is serving a 188-month prison sentence at the Federal Medical Center at

Devens (hereinafter "Devens"). Plaintiff arrived there on July 18, 2007, and has a medical history of, among other things, hypertension, diabetes mellitus since 1990 with progressive renal failure due to diabetic nephropathy, chronic renal failure on hemodialysis since 2006, and severe pulmonary hypertension, most likely secondary to hypertensive cardiovascular disease. (Report of FMC Devens Clinical Director (Document No. 8) Ex. 1.) Devens had a renal transplant program with the University of Massachusetts Medical Center until January 2010, at which time it stopped taking new patients. In July 2010, Devens finalized a relationship with Beth Israel Deaconess Medical Center ("BIDMC") in Boston, which would handle all renal transplants after January 2010. (Id.)

Plaintiff's application for a transplant was originally received by the medical department at Devens on August 9, 2007; receipt of the application began the medical department's process for submission of his request to the central office of the Bureau of Prisons ("BOP") for its approval. (Id. at 2.) Plaintiff was examined by a consulting nephrologist on September 5, 2007, who concluded that he might be a potential kidney transplant candidate. (Id.) Sometime thereafter, Plaintiff was placed in a group of thirteen other inmates, all of whom were potential transplant candidates; his official transplant work-up began on June 23, 2008. (Id.) On March 16, 2009, a Transplant Review Packet was sent to the Umass Transplant Team for consideration and on October 27, 2009, a Transplant Packet was sent to the BOP office of Transplant Advisory Group for approval for a renal transplant evaluation; BOP approved the request on March 5, 2010, indicating that Plaintiff could proceed with the transplant evaluation at UMass. (Id.)

Unfortunately for Plaintiff, UMass did not get to his application before terminating its relationship with Devens. Plaintiff's application, therefore, was transferred to BIDMC in July of 2010 after its agreement with Devens was finalized. (Id.) In October of 2010, BIDMC notified Devens that Plaintiff required several tests before his application could proceed, including a stress test, a chest x-ray and an echocardiogram, electrocardiography, and a colonoscopy. (Id.) It appears as though Plaintiff complied with the request for these tests from December 28, 2010, to March 10, 2011. (Id. at 2-3.) At a March 10, 2011, appointment, the BIDMC transplant team requested that Plaintiff get an elective right heart catheterization. (Id. at 3.) On October 27, 2011, Plaintiff saw a pulmonologist who reported that he was doing well but did not give him clearance for general anesthesia. Thereafter, beginning on January 31, 2012, Plaintiff suffered health set-backs that resulted in his admittance to UMass Medical Center with chest pains resulting from, among other things, pulmonary hypertension. (Id. at 4.) Plaintiff again met with the BIDMC transplant team on March 16, 2012, which concluded that he would require further cardiac workup before becoming a renal transplant candidate. (Id.)

Plaintiff continued to meet with a pulminologist and BIDMC doctors who eventually, on August 6, 2012, suggested a left and right heart catheterization because of Plaintiff's pulmonary hypertension; these were performed on October 16, 2012, and required Plaintiff to follow up with a four-week course of dual antiplatelet therapy. (Id.) On November 6, 2012, the BIDMC transplant team reported that it must wait at least three months after the catheterization before continuing Plaintiff's work-up and transplant. Plaintiff was given respiratory clearance for surgery on November 12, 2013,

although on December 14, 2013, he had a follow up CT scan of his chest to evaluate an abnormal chest x-ray from October, which indicated that Plaintiff had a healing rib fracture. (Id. at 5.) The court is not aware of what further events may have since ensued.

Plaintiff filed the present action on November 13, 2012, alleging cruel and unusual punishment based on alleged delays in processing his request for a kidney transplant.

## II.  DISCUSSION

Invoking 28 U.S.C. § 2241, Plaintiff's petition for a writ of habeas corpus requests that the court order Defendant to process his transplant request without delay. Defendant, in response, argues that Plaintiff's petition should be dismissed because a habeas petition is not the appropriate vehicle for challenging conditions of confinement. The court agrees with Defendant.

Although Plaintiff characterizes this action as a request for habeas relief in the form of an order requiring the BOP to complete his pulmonary tests and move his transplant application along, such relief is not cognizable under 28 U.S.C. § 2241. Habeas petitions are the legally appropriate mechanism for challenging the "legality or duration" of confinement.  *Allen v. McCurry*, 449 U.S. 90, 104 (1980) ("the purpose of [the writ of habeas corpus] is not to redress civil injury, but to release the applicant from unlawful physical confinement").  *See also Crooker v. Grondolsky*, 2012 WL 5416422, at * 1 (D. Mass. Nov. 1, 2012). In contrast, Plaintiff's claim, which is avowedly a claim of improper medical care, is more appropriately brought as a civil rights action along the lines of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971). As described in *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991), "if the prisoner is seeking what can fairly be described as a quantum change in the level of custody . . . then habeas corpus is his remedy," but "if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law." While, at times, courts have construed habeas petitions as civil complaints, such a conversion here, in the court's opinion, would not be appropriate.

     First, while Plaintiff may be understandably frustrated with the length of time his application for a transplant has been pending - - although the court offers no opinion as to whether anyone at Devens acted improperly in this regard - - it is unable to address his claim as filed. A civil action requires Plaintiff to name, in his or her personal capacity, any individual who has directly violated his constitutional rights. *See Ashcroft v. Iqbol*, 556 U.S. 662, 676 (2009). Vicarious liability does not apply as Plaintiff's complaint currently stands; naming the Warden - - who himself has not been involved in Plaintiff's medical care - - is insufficient for purposes of a civil claim, absent allegations of direct harm by him. *See, e.g., Moor v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) ("The right respondent in a [habeas] action is the warden of the prison; the right defendants in a section 1983 suit are the persons whose wrongful acts harmed the plaintiff (and the warden is rarely a proper defendant, because he is not vicariously liable for subordinates' acts).").

     Second, along similar lines, a plaintiff pursuing a civil action must, after identifying an individual defendant, effect personal service on him or her. As explained by Defendant, serving the appropriate individual defendant is particularly crucial in

*Bivens* cases where such an individual may not necessarily be entitled to representation by the Department of Justice; the United States Attorney's Office will only appear on behalf of a sued individual if a request by that individual has been made and approved by the Department of Justice. 28 C.F.R. § 50.15.

Third, a plaintiff who wishes to pursue a civil action must submit his claim with the $350.00 filing fee required for any civil action or, if he cannot afford that fee, apply to the court to proceed *in forma pauperis*. *See* 28 U.S.C. § 1914 (a). As one court explained, a petitioner

> cannot be excused from paying the $350 filing fee merely by calling his pleading a habeas corpus petition; otherwise any prisoner could simply submit his civil rights claims on a habeas petition and pay only a $5 filing fee, and then wait for the court to construe his "petition" to be a civil complaint. The $350 filing fee prescribed by Congress for non-habeas civil actions cannot be so easily circumvented.

*Shinault v. Roal*, 2010 WL 3926204, at *2 (D. Minn. Aug. 24, 2010).

### III. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion to dismiss be allowed without prejudice to Plaintiff's refiling his allegations as a *Bivens* complaint, together with the $350.00 filing fee or a motion to proceed *in forma pauperis*.[1]

---

[1]The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of

DATED:  March 8, 2013

        /s/   Kenneth P. Neiman   
KENNETH P. NEIMAN  
U.S. Magistrate Judge

---

the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.